# 24-CV-06215-SDW

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ATHENA KOSTOPOULOS,

Appellant,

against

AMERICAN MORTGAGE INVESTMENT PARTNERS
MANAGEMENT, LLC, AS SERVICER FOR WILMINGTON
SAVINGS FUND SOCIETY FSB, AS OWNER TRUSTEE OF THE
RESIDENTIAL CREDIT OPPORTUNITIES TRUST VI-A

Appellees.

---

ON APPEAL FROM AN ORDER IN A BANKRUPTCY ACTION FROM
THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT
OF NEW JERSEY

---

BRIEF FOR THE APPELLANT

---

JONES, WOLF & KAPASI, LLC
Joseph K. Jones, Esq.
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 Telephone
(973) 244-0019 Facsimile
jkj@legaljones.com

*Attorneys for Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………...iii-iv

JURISDICTIONAL STATEMENT…………………………………….  1

ISSUES PRESENTED FOR REVIEW…………………………………  2

STATEMENT OF THE CASE……………………………………………  3

SUMMARY OF THE ARGUMENT…………………………………… 11

ARGUMENT…………………………………………………………… 12

I.      THE BANKRUPTCY COURT INCORRECTLY DISMISSED
THE APPELLANT-DEBTOR'S BANKRUPTCY CASE WITH
PREJUDICE BECAUSE APPELLEE-CREDITORS FAILED TO
DEMONSTRATE THAT THEY OWNED OR CONTROLLED
THE UNDERLYING DEBT AND THEREFORE, APPELLEE-
CREDITORS LACKED STANDING TO COLLECT ON THEIR
PROOF OF CLAIM RELATED TO APPELLANT-DEBTOR'S
MORTGAGE…………………………………………………...12

A. The Appellee-Creditors Do Not Have Standing To Collect On
Appellant-Debtor's Mortgage, And Even If The Appellee
-Creditors Could Demonstrate That They Had Been Assigned
The Underlying Debt And/Or That They Had Possession Of The
Original Note And Mortgage, The Appellant-Debtor's Mortgage
Merged Into The June 22, 2018 Final Judgment Of Foreclosure,
Which Was Not Assigned To Appellee-Creditors, Resulting In
The Mortgage Contract Being Extinguished, The Mortgage
Ceasing To Exist And The Appellee-Creditors Neither Owning
Nor Controlling The Underlying Debt…………………………..  12

II.    THE BANKRUPTCY COURT INCORRECTLY DETERMINED
THAT APPELLANT-DEBTOR'S MOTION TO EXPUNGE OR
REDUCE APPELLEE-CREDITORS' CLAIMS WAS MOOTED
BY THE DISMISSAL OF THE INSTANT BANKRUPTCY CASE… 18

CONCLUSION……………………………………………………….......  20

ii

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                           <u>PAGES</u>

*City of Jersey City v Jersey City Cmty Hous. Corp.,*
2023 U.S. Dist. LEXIS 78405 (USDC D.N.J. 2023)……………………………  13

*Deutsche Bank Nat'l Trust Co. v Mitchell*, 422 N.J. Super. 214
(App. Div. 2011)……………………………………………………………………  13

*Farzan v Nationstar Mortg.,* LLC, 2024 U.S. Dist. LEXIS 1295
(USDC D.N.J. 2024)………………………………………………………………...  3

*Garmon v Cmty. Loan Servicing,* LLC, 2024 U.S. Dist. LEXIS 22153
(USDC D.N.J. 2024)………………………………………………………………...  13

*Heine v Comm'r of the Dep't. of Cmty.* Affairs, 2017 U.S. Dist. LEXIS
167044 (USDC D.N.J. 2017)……………………………………………………….. 18

*In re Goione*, 595 B.R. 477 (USBC D.N.J. 2019)……………………………….. 13

*In re Hopkins*, 2023 U.S. Dist. LEXIS 216322 (USDC D.N.J. 2023)……………  3

*Knox v SEIU, Local 1000*, 567 U.S. 298 (2012)………………………………….19

*Mortgage v Kostopoulos*, 2023 N.J. Super. Unpub. LEXIS 1890
(App. Div. 2023)……………………………………………………………………  5

*Moynihan v W. Chester Area Sch Dist.*, 813 Fed.Appx. 825
(3rd Cir. 2020)……………………………………………………………………… 19

*Nationstar Mortgage, LLC v Kostopoulos*, 2019 N.J. Super. Unpub.
LEXIS 1932 (App. Div. 2019)…………………………………………………… 3-5

*Wilmington Trust, N.A. v 24 Commerce St.* LLC, 2023 U.S. Dist.
LEXIS 43472 (USDC D.N.J. 2023)………………………………………………... 13

*Wright-Gottshall v New Jersey*, 2024 U.S. App. LEXIS 10158
(3rd Cir. 2024)……………………………………………………………………… 18

## STATUTES & REGULATIONS

11 U.S.C. §1307(c)………………………………………………….   1

11 U.S.C. §1307(c)(1)……………………………………………….   11

11 U.S.C. §1325………………………………………………………..   1

11 U.S.C. §1325(a)(3)……………………………………………….   11

28 U.S.C. §157…………………………………………………………   1

28 U.S.C. §157(b)……………………………………………………….   2

28 U.S.C. §157(b)(1)………………………………………………….   1

28 U.S.C. §157(b)(2)(G)……………………………………………..   2

28 U.S.C. §158(a)(1)………………………………………………….   1-2

## JURISDICTIONAL STATEMENT

On October 13, 2022, appellant-debtor, Athena Kostopoulos, filed a bankruptcy case pursuant to Title 11 of the United States Code and Chapter 13 of the United States Bankruptcy Code, in the United States Bankruptcy Court, District of New Jersey (*see* Record, Doc. No. 93-1 at Pp.1-2;98). Mrs. Kostopoulos moved before the Bankruptcy Court on March 6, 2024 to expunge or reduce the proof of claim filed by Wilmington Savings Fund Society FSB, as Owner Trustee of the Residential Credit Opportunities Trust VI-A ("RCOT VI-A") (*see* Record, Doc. No. 93;93-1). In an order dated May 7, 2024, the Hon. Vincent F. Papalia, U.S.B.J., dismissed the instant bankruptcy case with prejudice, pursuant to 11 U.S.C. §§1307(c) and 1325, and determined that Mrs. Kostopoulos' motion to expunge or reduce the claim filed by RCOT VI-A was moot as a result of the dismissal (*see* Record, Doc. No. 98). On May 16, 2024, Mrs. Kostopoulos filed a timely notice of appeal from the May 7, 2024 Bankruptcy Court Order.

Pursuant to 28 U.S.C. §158(a)(1), the District Court has jurisdiction to hear appeals from the final judgments, orders and decrees of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under 28 U.S.C. §157. An appeal under 28 U.S.C. §158(a)(1) shall be taken only to the district court in which the bankruptcy judge is serving. 28 U.S.C. §157(b)(1) provides that bankruptcy judges may hear and determine all cases and all core proceedings under Title 11.

Since this action arose out of the filing of Mrs. Kostopoulos bankruptcy case, pursuant to Title 11 of the United States Code and Chapter 13 of the United States Bankruptcy Code, in the United States Bankruptcy Court, District of New Jersey, and since the dismissal of the bankruptcy case, along with the Bankruptcy Court's denial of confirmation of the debtor's second amended plan, are core proceedings under Title 11 (*see* 28 U.S.C. §157[b][2][G]), the United States District Court for the District of New Jersey has appellate jurisdiction over of the  May 7, 2024 order of the United States Bankruptcy Court, District of New Jersey, pursuant to 28 U.S.C. §§157(b) and 158(a)(1). The Bankruptcy Court's order of May 7, 2024 dismissed the bankruptcy case with prejudice, and thus constitutes the final decision in this action (*see* Record, Doc. No. 98).

## ISSUES PRESENTED FOR REVIEW

1.  Whether the Bankruptcy Court incorrectly dismissed appellant-debtor's bankruptcy case with prejudice, given that the appellee-creditors did not own or control either the underlying debt or the final judgment of foreclosure, and therefore, lacked standing to collect on their proof of claim related to appellant-debtor's mortgage loan?

2.  Whether the Bankruptcy Court incorrectly determined that appellant-debtor's motion to expunge or reduce appellee-creditors' claims was mooted by the dismissal of the instant bankruptcy case?

A District Court reviews a Bankruptcy Court's legal conclusions de novo, their factual findings for clear error and their discretionary decisions for abuse thereof (*see Farzan v Nationstar Mortg. LLC*, 2024 U.S. Dist. LEXIS 1295 [USDC D.N.J. 2024]; *In re Hopkins*, 2023 U.S. Dist. LEXIS 216322 [USDC D.N.J. 2023]). In deciding a bankruptcy appeal, a District Court is limited to the record before the Bankruptcy Court (*see Farzan, supra; In re Hopkins, supra*).

## STATEMENT OF THE CASE

Appellant, Athena Kostopoulos, borrowed $564,000 from Lehman Brothers Bank FSB (Lehman Brothers), she signed a promissory note for a residential mortgage loan on September 16, 2003, and on the same date, Athena and Thomas Kostopoulos executed a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Lehman Brothers, covering the subject premises (*see* Record, Doc. No. 115 at Pp.12-18;19-37; *see also Nationstar Mortgage, LLC v Kostopoulos*, 2019 N.J. Super. Unpub, LEXIS 1932 [App. Div. 2019]). Appellant and her husband defaulted on their mortgage loan in July 2006 for failing to make timely payments (*see Nationstar Mortgage, LLC v Kostopoulos*, 2019 N.J. Super. Unpub. LEXIS 1932 [App. Div. 2019]).

On December 21, 2010, MERS, as nominee for Lehman Brothers, assigned the mortgage to CitiMortgage, Inc. (*see* Record, Doc. No. 115 at Pp.38-40). Nationstar Mortgage, LLC purchased the interest in the servicing agreement for the

mortgage on March 6, 2012, and on November 12, 2013, CitiMortgage came into possession of the original note, holding same until sending it to foreclosure counsel of record on April 21, 2015 (*see Nationstar Mortgage, LLC v Kostopoulos*, 2019 N.J. Super. Unpub. LEXIS 1932 [App. Div. 2019]). CitiMortgage assigned the mortgage to Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-35 ("Wilmington Trust Company") on February 28, 2014 (*see* Record, Doc. No. 115 at Pp.41-43).

On January 20, 2015, Wilmington Trust Company filed suit to foreclose on the mortgage in state court against Athena Kostopoulos and Thomas Kostopoulos, and it subsequently moved for summary judgement on August 7, 2015 (*see* Record, Doc. No. 115 at Pp.65-71). On December 10, 2015, Wilmington Trust Company was granted summary judgment against the Kostopoulos debtors, the Kostopoulos' answer was stricken and the matter was remanded to the Office of Foreclosure for further processing (*see* Record, Doc. No. 115 at Pp.65-71).

On August 21, 2017, Wilmington Trust Company assigned the mortgage to Nationstar Mortgage, LLC (Nationstar Mortgage) (*see* Record, Doc. No. 115 at Pp.46-49). On October 16, 2017, the state trial court granted Wilmington Trust Company's motion to substitute Nationstar Mortgage into the state foreclosure action, and on May 21, 2018, Nationstar Mortgage moved for final judgment (*see*

*Nationstar Mortgage, LLC v Kostopoulos*, 2019 N.J. Super. Unpub. LEXIS 1932 [App. Div. 2019]). Pursuant to an order dated June 22, 2018, the state court granted final judgment in foreclosure to Nationstar Mortgage for $1,063,755.67 plus contract interest of 6% on $681,931.44, the principal sum in default, and lawful interest after said order (*see* Record, Doc. No. 93-1 at Exhibit A).

In March of 2021, Nationstar Mortgage assigned ownership of the mortgage to MTGLQ Investors LP (MTGLQ), and transferred the servicing of the mortgage to Selene Finance, LP ("Selene") (*Mortgage v Kostopoulos*, 2023 N.J. Super. Unpub. LEXIS 1890 [App. Div. 2023]). The Appellate Division in *Mortgage* also noted that it was unclear whether these assignments were ever recorded (*see Mortgage v Kostopoulos, supra*). Further adding to the uncertainty here surrounding the many assignments of the mortgage is the fact that in its designation of items to be included in the Record, RCOT VI-A included motion papers filed in Bankruptcy Court in December 2022, which contained an exhibit indicating that an assignment of the mortgage by Wilmington Trust Company to U.S. Nation Bank Association, not in its individual capacity, but solely as Trustee of the NRZ pass-through Trust VIII ("U.S. Bank") took place on March 5, 2020 (*see* Record, Doc. No. 115 at Pp.52-52). Given that Wilmington Trust Company had previously assigned the mortgage to Nationstar Mortgage on August 21, 2017, it is not clear how Wilmington Trust Company had any authority to assign the mortgage to U.S. Bank on March 5, 2020.

Unfortunately, the confusion and uncertainty in this case was not limited to the numerous assignments of the mortgage, given the uncertainty and confusion as to which entity had the right to collect on the foreclosure of appellant-debtor's mortgage. As previously noted, Nationstar Mortgage moved for final judgment in the state court action to foreclose on the mortgage on May 21, 2018. On June 22, 2018, Nationstar Mortgage was granted a final judgment of foreclosure in the amount of $1,063,755.67, plus interest. There is no documentation indicating that Nationstar Mortgage has assigned that foreclosure judgment to any other entity. Nevertheless, on December 15, 2022, American Mortgage Investment Partners, LLC ("AMIP"), as servicer for RCOT VI-A, filed a proof of claim in Bankruptcy Court seeking $1,347,420.15, indicating therein that the basis for the claim was "Mortgage Loan." Accordingly, there are two separate entities and both entities have taken steps to collect following the foreclosure of appellant-debtor's mortgage.   It should be noted that the same law firm of Friedman Vartolo, LLP, is representing *both* Nationstar Mortgage, LLC in the foreclosure action (Super Court of New Jersey – Docket No.: F-002238-15) *and* AMIP, as Servicer for RCOT VI-A in the case herein.  This fact raises the question: How can the same law firm argue in state court that Nationstar has the right to foreclose, and file a Pluries Writ of Execution, and at the same time continue to argue in the bankruptcy court that RCOT VI-A, has a valid claim as a secured creditor?

6

By notice of motion dated March 6, 2024, appellant debtor Athena Kostopoulos moved to expunge or reduce the December 15, 2022 proof of claim filed by Wilmington Savings for $1,347,420.15 with regard to the subject property (*see* Record, Doc. No. 93;93-1 at p.2). Mrs. Kostopoulos pointed out that RCOT VI-A failed to attach any documentation to its proof of claim to demonstrate that the mortgage had been transferred to RCOT VI-A (*see* Record, Doc. No. 93-1 at p.2). Mrs. Kostopoulos also pointed out that in response to a subpoena issued to RCOT VI-A requesting documents that supported its claimed ownership or control of the mortgage, and thus its standing to file the proof of claim, she received an assignment of mortgage dated February 15, 2023, indicating that MTGLQ, as well as a limited power of attorney given by MTGLQ to Corelogic Solutions LLC on March 15, 2021 to last until May 1, 2022 to, *inter alia*, draft any assignment on behalf of MTGLQ (*see* Record, Doc. No. 93-1 at Exhibits B and C). Said limited power of attorney expired nine months prior to the purported assignment noted above on February 15, 2023 (*see* Record, Doc. No. 93-1 at p.2). Mrs. Kostopoulos further pointed out that RCOT VI-A did not provide any documentation regarding an assignment of the foreclosure judgment that was entered on June 22, 2018 in state court (*see* Record, Doc. No. 93-1 at Pp.2-3). Mrs. Kostopoulos argued that RCOT VI-A's proof of claim reveals that it does not own or control the underlying debt, given that the foreclosure judgment was entered in favor of Nationstar Mortgage, it is Nationstar

Mortgage that is attempting to foreclose on the mortgage in state court and RCOT VI-A has not provided an assignment of that foreclosure judgment from Nationstar Mortgage (*see* Record, Doc. No. 93-1 at p.3). According to Mrs. Kostopoulos, absent an assignment of the foreclosure judgment, RCOT VI-A has no legal interest whatsoever in the mortgage, and therefore, its proof of claim had to be expunged (*see* Record, Doc. No. 93-1 at p.4).

In the alternative, Mrs. Kostopoulos contended that if the proof of claim was somehow determined to be valid, it had to be reduced because the proof of claim calculated interest at the note rate, however, once the note and mortgage merged into the judgment, interest continued to accrue at the judgment rate and not at the note rate of interest (*see* Record, Doc. No. 93-1 at Pp.4-5). Mrs. Kostopoulos provided detailed calculations which indicated that the interest savings totaled $196,061.04, and therefore the amount sought in the proof of claim, $1,347,420.15, should be reduced to $1,151,359.11 (*see* Record, Doc. No. 93-1 at p.5). Mrs. Kostopoulos also contended that pursuant to court order, she made monthly protection payments to the servicer of the mortgage, FCI Lender Services, Inc., totaling $54,103.52, and that if the proof of claim is expunged, she should be refunded that money, but if the proof of claim is permitted, she should be given a credit for said payments (*see* Record, Doc. No. 93-1 at p.6).

In opposition papers dated April 11, 2024, AMIP, as servicer for RCOT VI-A, argued that RCOT VI-A is the secured creditor, and it has a recorded assignment and possession of the original note and mortgage (*see* Record, Doc. No. 95 at p.1). AMIP stated that although the limited power of attorney noted above had expired, a second limited power of attorney had been executed and was effective on May 1, 2022 until May 1, 2024 (*see* Record, Doc. No. 95 at p.2 and 95-1 at Exhibit A). AMIP also stated that RCOT VI-A was in the process of recalculating its proof of claim and would supplement its claim accordingly (*see* Record, Doc. No. 95 at p.2). In supplemental opposition papers dated May 1, 2024, AMIP contended that the debtor used the incorrect post-judgment interest rate in her calculations and the correct payoff amount, including the sheriff's commission, was $1,268,237.78 (*see* Record, Doc. No. 97 at Pp.1,3).

Following submission of appellant-debtor Kostopoulos' motion to expunge or reduce the claim filed by RCOT VI-A and appellee-creditors AMIP / RCOT VI-A's written opposition thereto, the Hon. Vincent F. Papalia, USBJ, presided over oral argument on said motion on May 2, 2024, during which appellant-debtor's counsel argued that the state court foreclosure judgment was obtained by Nationstar Mortgage, the actual creditor, and that the creditor that filed the proof of claim in this matter did not have an assignment of that foreclosure judgment (5/2/24 Tr.4-5). As appellant-debtor's counsel started to argue about the merger doctrine, Judge

Papalia cut him off and commented that "[a]ll this stuff has been gone over before. Not only in this case but in the prior case of the debtor, but also in the state court up and down reconsideration, appeals," (5/2/24 Tr.5). Judge Papalia went on to find that appellant-debtor's motion here was filed in bad faith, in part, because this was an attempt "to litigate again in this Court the issues that have been litigated ad [nauseam] in state court and here," that the real purpose of this motion "was to again delay indefinitely" (5/2/24 Tr.6), and that starting another litigation in this Court based on standing, improper assignment and fraud in the assignment seeks to re-litigate issues here that were "litigated ad nauseum in the state court" (5/2/24 Tr.15).

Judge Papalia noted that the proof of claim in this case seeks pre-petition arrears dating back to July 1, 2006, almost 18 years ago (5/2/24 Tr.11), and determined that "the extensive record in this Court amply demonstrate that the real intention and goal of the debtor is to avoid paying the foreclosure judgment as long as is possible and to continue to litigate and delay and cause additional expense for what is now coming to the close of a second decade" (5/2/24 Tr.12). Judge Papalia further commented that both of debtor's bankruptcy petitions were filed on the eve of foreclosure sales, and that "[h]ow the debt arose, more run-of-the-mill mortgage foreclosure and default, that has resulted in almost two decades of litigation before each level of the courts in New Jersey and this Court" (5/2/24 Tr.14-15). In further discussing a history of delay in both state court and bankruptcy court, Judge Papalia

noted that "[d]ebtor has been in default on the mortgage since 2006. A final judgment of foreclosure was entered in 2018" (5/2/24 Tr.17). Judge Papalia dismissed this bankruptcy proceeding pursuant to 11 U.S.C. §1307(c)(1) (unreasonable delay by the debtor that is prejudicial to the secured creditor, and pursuant to 11 U.S.C. §1325(a)(3) (that debtor's first and second bankruptcy cases were not filed, presented or prosecuted in good faith) (5/2/24 Tr.20; Record, Doc. No. 98). Lastly, Judge Papalia determined that the dismissal of this bankruptcy proceeding "moots the motion to modify the claim" (5/2/24 Tr.20; Record, Doc No. 98).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court incorrectly dismissed the bankruptcy case with prejudice, and ignored both the facts and the law raised in appellant-debtor's motion to expunge or reduce the proof of claim, when it found that the appellant-debtor acted in bad faith, and caused unreasonable and prejudicial delay in this matter. The Bankruptcy Court also failed to consider, or address, any of the appellant-debtor's arguments on her underlying motion to expunge or reduce the proof of claim here, and if the Bankruptcy Court had done so, it would have understood that neither AMIP nor RCOT VI-A was not assigned the mortgage in this case, and because it lacked the requisite ownership or control of the underlying debt, it did not have standing to collect on its proof of claim. Lastly, the Bankruptcy Court incorrectly determined that its dismissal of the instant Bankruptcy case mooted the appellant-

11

debtor's motion to expunge or reduce the appellee-creditors' claims, because the
Bankruptcy Court still could have granted effective relief in the form of reducing the
amount sought in the proof of claim, especially in light of the fact that appellee-
creditors' papers filed in opposition to appellant-debtor's motion to expunge or
reduce acknowledge that the amount sought in the proof of claim was overstated by
about $100,000.

## ARGUMENT

I. **THE BANKRUPTCY COURT INCORRECTLY DISMISSED
THE APPELLANT-DEBTOR'S BANKRUPTCY CASE WITH
PREJUDICE  BECAUSE APPELLEE-CREDITORS FAILED
TO DEMONSTRATE THAT THEY OWNED OR
CONTROLLED THE UNDERLYING DEBT AND
THEREFORE, APPELLEE-CREDITORS LACKED
STANDING TO COLLECT ON THEIR PROOF OF CLAIM
RELATED TO APPELLANT-DEBTOR'S MORTGAGE**

   A. **The Appellee-Creditors Do Not Have Standing To Collect On
   Appellant-Debtor's Mortgage, And Even If The Appellee-
   Creditors Could Demonstrate That They Had Been Assigned
   The Underlying Debt And/Or That They Had Possession Of
   The Original Note And Mortgage, The Appellant-Debtor's
   Mortgage Merged Into The June 22, 2018 Final Judgment Of
   Foreclosure, Which Was Not Assigned To Appellee-Creditors,
   Resulting In The Mortgage Contract Being Extinguished, The
   Mortgage Ceasing To Exist And The Appellee-Creditors
   Neither Owning Nor Controlling The Underlying Debt**

   " 'As a general proposition, a party seeking to foreclose a mortgage must own
or control the underlying debt' (citations omitted). And '[i]t is well established in
New Jersey that either possession of the note or an assignment of the mortgage that

predated the original complaint confers standing on a party' (citations omitted)"
(*Wilmington Trust, N.A. v 24 Commerce St. LLC*, 2023 U.S. Dist. LEXIS 43472
[USDC D.N.J. 2023]). " 'In the absence of a showing of such ownership or control,
the plaintiff lacks standing to proceed with the foreclosure action and the complaint
must be dismissed' (citation omitted)" (*Deutsche Bank Nat'l Trust Co. v Mitchell*,
422 N.J. Super. 214, 222 [App. Div. 2011]).

It is equally well-established that under the New Jersey merger doctrine, a
loan no longer exists after a default judgment leads to the entry of a final judgment
(*see City of Jersey City v Jersey City, Cmty. Hous. Corp.*, 2023 U.S. Dist. LEXIS
78405 [USDC D.N.J. 2023]). Pursuant to the New Jersey merger doctrine, a
mortgage merges with a final judgment of foreclosure and ceases to exist at that
point (*see Garmon v Cmty. Loan Servicing, LLC*, 2024 U.S. Dist. LEXIS 22153
[USDC D.N.J. 2024]). Under New Jersey law, the mortgage merges into the final
judgment of foreclosure, the mortgage contract is extinguished and all contractual
rights under the mortgage are merged into the foreclosure judgment (*see Garmon,
supra, citing In re Goione*, 595 B.R. 477, 483 [USBC D.N.J. 2019]). " ' Thereafter,
a mortgage can no longer serve as a basis for determining the obligations of the
parties. Instead, litigants must look to the judgment' (citation omitted)" (*Garmon,
supra*).

For the reasons set forth below, when this Court applies the above-noted law, doctrines and principles to the within matter, it is appellant-debtor's position that her motion to expunge the appellee-creditor's proof of claim should have been granted. It is also appellant-debtor's position that for the reasons set forth below, the Bankruptcy Judge abused his discretion when he neglected to address or consider any of appellant-debtor's arguments and documentation submitted in support of her motion to expunge or reduce the proof of claim, and instead decided to *sua sponte* dismiss the appellant-debtor's case, based upon his clearly erroneous factual findings regarding both appellant-debtor's purported unreasonable delay and her alleged bad faith in this bankruptcy case.

To begin, it should be noted that during the oral argument on appellant-debtor's motion to expunge or reduce the proof of claim, and the oral decision read on the record, the Bankruptcy Judge, on five separate occasions, referred to various dates and times to emphasize appellant-debtor's alleged unreasonable and prejudicial delay here: referring to appellant-debtor's mortgage "default in 2006, which is 18 years ago" (5/2/24 Tr.6); referring to the proof of claim which sought "pre-petition arrears dating back to July 1st, 2006, almost 18 years ago" (5/2/24 Tr.11); "the extensive record in this Court amply demonstrates that the real intention and goal of the debtor is to avoid paying this foreclosure judgment as long as is possible and to continue to litigate and delay and cause additional expense for what

14

is now coming to the close of a second decade" (5/2/24 Tr.12); referring to appellant-debtor's debt, which arose from a run-of-the-mill mortgage foreclosure and default "that has resulted in almost two decades of litigation before each level of the courts in New Jersey" (5/2/24 Tr.14); and referring to a history of delay in both the state and bankruptcy courts, "[d]ebtor has been in default on the mortgage since 2006. A final judgment of foreclosure was entered in 2018" (5/2/24 Tr.17). The Bankruptcy Judge's repeated references to the lengthy delays noted above as attributable to the appellant-debtor are completely disingenuous. Although appellant-debtor may have defaulted on her mortgage in July 2006, (the issue here was a dispute over wrongfully imposed force placed insurance, not a default in payments) it was the mortgage holder that waited nearly nine (9) years before filing suit to foreclose on the mortgage in state court on January 20, 2015. Additionally, despite obtaining summary judgment against the Kostopoulos debtors in the state foreclosure action on December 10, 2015, the mortgage holder waited almost two and a half (2 ½) years before moving for final judgment on May 21, 2018. Although appellant-debtor had absolutely nothing to do with the nearly eleven and a half (11 ½) years of delay here, which was caused solely by the mortgage holder, the Bankruptcy Judge never considered that fact, and instead chose to repeatedly blame only the appellant-debtor for all of the lengthy delays in this matter.

The Bankruptcy Judge's erroneous factual findings did not stop with his determination about appellant-debtor's purported unreasonable and prejudicial delay, and continued with his finding that the appellant-debtor acted in bad faith because she was allegedly trying to litigate issues in this matter that had already been litigated in both bankruptcy court and state court. Once again, the Bankruptcy Judge, on five separate occasions, commented that the appellant-debtor was attempting to re-litigate issues that had been previously decided in state court and bankruptcy court: "You know what? All this stuff has been gone over before. Not only in this case but in the prior case of the debtor, and . . . also in the state court up and down reconsideration appeals" (5/2/24 Tr.5); "the issues that have been litigated ad [nauseam] in state court and here" (5/2/24 Tr.6); appellant-debtor wants "to re-litigate the same things all over again in this Court" (5/2/24 Tr.7); "the real purpose of this case was to obtain a litigation advantage against the secured creditor by staying their foreclosure and then seeking to re-litigate it again" (5/2/24 Tr.16); and referring to standing and improper assignments of the mortgage, the Bankruptcy Judge stated that these issues "were all addressed" and "litigated in state court" (5/2/24 Tr.20). The Bankruptcy Judge's finding of an attempted re-litigation of issues here by the appellant debtor was clearly erroneous because none of the parties and none of the issues raised in appellant-debtor's motion to expunge or reduce the proof of claim were part of any prior proceedings in state court or in bankruptcy

court. The crux of appellant's motion centered on the December 15, 2022 proof of claim filed by AMIP as servicer for RCOT VI-A. This proof of claim had nothing to do with any prior litigation, and neither AMIP nor RCOT VI-A had been litigants in any prior litigation. Additionally, the New Jersey merger doctrine, the mortgage merging into the foreclosure judgment and thereafter ceasing to exist, the lack of an assignment of the foreclosure judgment and a motion to expunge or reduce the proof of claim were all issues that were never addressed, discussed or decided in any prior litigation.

If the Bankruptcy Judge had chosen to address the merits of appellant-debtor's motion to expunge or reduce the proof of claim, he would have found that on June 22, 2018, Nationstar Mortgage was awarded a final judgment of foreclosure on the debtor's mortgage for $1,063,755.67, plus interest. The Bankruptcy Judge would have also found that pursuant to the New Jersey merger doctrine, the debtors' mortgage, and all contractual rights under the mortgage, merged into the final judgment of foreclosure and said mortgage ceased to exist at that point. The Bankruptcy Judge would have further found that with no mortgage and no contractual rights under the mortgage, AMIP was servicing nothing, and RCOT VI-A did not own or control the mortgage, regardless of whether it claimed to possess the note or whether it had a purported assignment of the mortgage, given that the mortgage and all contractual rights thereunder ceased to exist on June 22, 2018.

Lastly, the Bankruptcy Judge would have found that AMIP and RCOT VI-A had to look to the final judgement of foreclosure to determine the obligations of the parties, and, with no demonstrated assignment of the final judgment of foreclosure by Nationstar Mortgage to any entity, AMIP and RCOT VI-A lacked standing to collect on their proof of claim related to appellant-debtor's mortgage.

## II.   THE BANKRUPTCY COURT INCORRECTLY DETERMINED THAT THE APPELLANT-DEBTOR'S MOTION TO EXPUNGE OR REDUCE APPELLEE-CREDITORS' CLAIMS WAS MOOTED BY THE DISMISSAL OF THE INSTANT BANKRUPTCY CASE

"Generally, a claim is moot when events following a complaint's filing preclude the court from granting effective relief" (*Wright-Gottshall v New Jersey*, 2024 U.S. App. LEXIS 10158 [3rd Cir. 2024]). Put another way, "[i]n order for a claim to be moot, . . . , it must be 'impossible for a court to grant any effectual relief' (citations omitted)" (*Heine v Comm'r of the Dep't of Cmty. Affairs*, 2017 U.S. Dist. LEXIS 167044 [USDC D.N.J. 2017]).

In the within matter, the Bankruptcy Court's dismissal of the appellant-debtor's bankruptcy case did not moot the appellant-debtor's motion to expunge or reduce the proof of claim filed by RCOT VI-A because the appellant-debtor sought the equivalent of money damages when it requested the alternative relief of reducing the proof of claim in the event the Bankruptcy Court found the proof of claim to be valid. Appellant-Debtor Athena Kostopoulos still had a concrete interest in the

18

outcome of the bankruptcy proceeding in that her motion papers provided a detailed analysis as to why RCOT V1-A's proof of claim for $1,347,420.15 had to be reduced by a total of $250,164.56 (*see* Record, Doc. No. 93-12 at Pp.5-6) (*see Knox v SEIU, Local 1000*, 567 U.S. 298, 307-308 [2012] [" '[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot' (citation omitted)"]).

It certainly would not have been impossible for the Bankruptcy Court to grant Mrs. Kostopoulos' motion, which sought, in the alternative, to reduce the proof of claim by about $250,000, an effectual relief for sure. It should be noted that the appellee-creditors submitted a supplemental response in the Bankruptcy Court to Ms. Kostopoulos' motion and therein argued that the total claim, inclusive of the sheriff's commission, was now $1,268,237.68, which amount was $79,182.37 less than the amount they had originally sought in their proof of claim (*see* Record, Doc. No. 97). The Bankruptcy Court could have, and should have, reviewed both appellant-debtor's moving papers and appellee-creditors' supplemental response and decided how much of a reduction of the claim Mrs. Kostopoulos was entitled to receive, given that her reduction claim was not moot (*see Moynihan v W. Chester Area Sch. Dist.*, 813 Fed. Appx. 825, 826 [3rd Cir. 2020] [although the declaratory and injunctive relief claims against a school district for not providing an autistic

child with a free and proper public education were mooted by the child's graduation, the claims for reimbursement were not moot]).

## CONCLUSION

Appellant-debtor Athena Kostopoulos respectfully requests that this Court reverse the May 7, 2024 Order of the Bankruptcy Court, reinstate her bankruptcy case and grant her motion to expunge or, alternatively, reduce the December 15, 2022 proof of claim filed by appellee-creditors AMIP and RCOT VI-A for the reasons stated herein.

Dated: July 14, 2024

Respectfully submitted,

*s/ Joseph K. Jones*
Joseph K. Jones, Esq.
JONES, WOLF & KAPASI, LLC
375 Passaic Avenue
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation
Typeface Requirements, and Type-Style Requirements

1.      This brief complies with the type-volume limitation of Rule 8015(a)(7)(B)(i) because this brief contains 4749 words.

2.      This brief complies with the typeface requirements of Rule 8015(a)(5)(A) because this brief has been prepared in a proportionally spaced typeface using WORD in Times New Roman 14.

Dated: July 14, 2024

*/s/ Joseph K. Jones*
Joseph K. Jones, Esq.

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies that Joseph K. Jones, Esq., is a member in good standing of the bar of the United States District Court for the District of New Jersey.

*/s/ Joseph K. Jones*
Joseph K. Jones, Esq.

Dated: July 14, 2024