24-CV-06215-SDW

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ATHENA KOSTPOULOS,
Appellant

vs.

AMERICAN MORTGAGE INVESTMENT PARTNERS MANAGEMENT, LLC
AS SERVICER FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, AS
OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITES
TRUST VI-A
Appellee

## ON APPEAL FROM AN ORDER IN A BANKRUPTCY ACTION
## FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

## BRIEF FOR THE APPELLEE

FRIEDMAN VARTOLO, LLP
Jason Schwartz, Esq.
1628 John F. Kennedy Boulevard
Suite 1810
Philadelphia, PA 19103
(212) 471-5100 Telephone
(212) 212-471-5150 Fax
bankruptcy@friedmanvartolo.com

Attorney for Appellee

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**……………………………………….…….…..2

**STATEMENT OF ISSUES PRESENTED**……………………...…….….……..3

**STATEMENT OF THE CASE**………………………………………….….…..3

**STANDARD OF REVIEW**……………………………………………....11

**SUMMARY OF THE ARGUMENT**…………………………………....12

**ARGUMENT**……………………………………………………......13

    **I.**    **The Bankruptcy Court Acted Within Its Proper Discretion to Dismiss the Debtor's Bankruptcy Because the Plan was Infeasible** ……………………………….….………………….……13

    **II.**   **The Bankruptcy Court Acted Within Its Proper Discretion to Dismiss the Debtor's Bankruptcy Because the Case was Filed in Bad Faith**……………………………………….…...14

    **III.**  **The Bankruptcy Court Properly Abstained from Considering the Debtor's Standing Challenge**………..……………18

**CONCLUSION**…………………………………………………………….20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

<u>In re 15375 Memorial Corp</u>, 589 F.3d 605 (3d Cir. 2009)………………….....15

<u>In re Fiber-Span,</u> Inc. 40 F. 4th 79 (3d Cir. 2022)………………………………..12

<u>In re Integrated Telecom Express</u>, 384 F. 3d 108 (3d Cir. 2004)………………..15

<u>In re LaRoche Industries, Inc.</u>, 312 B.R. 249 (D.Del 2024)…………………..19, 20

<u>In re Li</u>, 654 B.R. 25 (Bankr. D.N.J. 2023)………………………………………...11

<u>In re Lilley</u>, 91 F3d 491 (3d Cir. 1996)………………………………………………13

<u>In re Maxus Energy Corporation</u>, 49 F. 4th 223 (3d. Cir. 2022)………………11,12

<u>In re Somerset Regional Water Resources</u>, 949 F.3d 837 (3d Cir. 2020)………..11

<u>United States v. Foster</u>, 891 F.3d. 93 (3d Cir. 2018)….………………………….12

### <u>Statutes</u>

Section 1307(a)(1)…………………………………………………….…13

Section 1307(a)(5)…………………………………………………….…13,14

28 U.S.C. 158 (a)(1)…………………………………………………………..11

## STATEMENT OF ISSUES PRESENTED

Did the Bankruptcy Court Correctly Determine that the Debtor's Bankruptcy Case was Filed for an Improper Purpose?

Did the Bankruptcy Court Correct Permissively Abstain From Deciding the Controversy Between the Parties?

## STATEMENT OF THE CASE

On September 16, 2003, Debtor Athena Kostopoulos and co-debtor Thomas Kostopoulos entered into a Note with Lehman Brothers Bank, FSB with a principal amount of $564,000.00.  (Record at Doc. No. 115 at Pp. 12-18).   A mortgage, also dated September 16, 2023, was executed to Mortgage Electronic Registration System, Inc. as nominee for Lehman Brothers Bank, F.S.B ("MERS") secured the property at 155 Summit Drive, Paramus, NJ 07652.  The mortgage secured by the real property has been assigned many times.  (Record at Doc. No. 115 at Pp. 20-36).  On December 21, 2010, MERS assigned the mortgage to Citimortgage, Inc ("Citimortgage") (Record at Doc. No. 115 at Pp. 38-39).   On February 28, 2014, Citimortgage assigned the assigned the mortgage to Wilmington Trust Company as Trustee for the Structured Asset Securities Corporation on Mortgage Pass-Through Certificates Series 2003-35 ("Wilmington Trust").  As reflected in the gap assignment filed on February 25, 2022, Wilmington Trust assigned the mortgage to Citimortgage.  On August 7, 2017, Citimortgage assigned the mortgage to

Nationstar Mortgage LLC ("Nationstar") (which was supplemented by a corrective assignment dated December 27, 2017).  Nationstar assigned by the mortgage to Wilmington Trust, as reflected in the gap assignment dated February 25, 2022 and a corrective assignment dated January 5, 2023.  On August 21, 2017, Wilmington Trust assigned the mortgage to Nationstar.  Nationstar assigned the mortgage to Wilmington Trust as reflected in the gap assignment dated November 29, 2022. Wilmington Trust assigned the mortgage to U.S. Bank National Association, not in its Individual Capacity but solely as Trustee for NRZ Pass-Through Trust VIII ("U.S. Bank") on March 5,2020.  U.S. Bank assigned the mortgage to MTGLQ Investors, L.P. ("MTGLQ") on December 20, 2022.   MTGLQ assigned the mortgage to Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VI-A on February 15, 2023.

A foreclosure action was filed on January 20, 2015 in the Superior Court of New Jersey.  (Record at Doc. No. 115 at P. 54).   On or about March 6, 2015, Debtor and Co-Debtor Thomas Kostopoulos filed an answer to the complaint, along with crossclaims.  (Record at Doc. No. 115 at P. 229).   On or about December 10, 2015, the Chancery Court struck the answer of the Debtor and Co-Debtor Thomas Kostopoulos and entered summary judgment on behalf of the Secured Creditor's predecessor in interest.  (Record at Doc. No. 115 at Pp. 65-69).

On or about May 11, 2016, Plaintiff moved for final judgment, which the Debtor and Co-Debtor Thomas Kostopoulos opposed.

On or about September 30, 2016, the Court granted Final Judgment over the Debtor and Co-Debtor Thomas Kostopoulos's objection.   On or about April 18, 2017, the debtor filled a certification stating she intended to cure the default under the mortgage within forty-five days of the Certification by either refinancing or selling the property. (Record at Doc. No. 115 at Pp. 71-72). Forty-five days from April 18, 2017 was June 2, 2017.

The Debtor failed to cure the loan and a renewed Motion for Final Judgment was filed on or about May 21, 2018.  (Record at Doc. No. 115 at P. 56). On or about June 22, 2018, the Court entered Final Judgment on behalf of the Creditor. (Record at Doc. No. 93-1 at Exhibit A).  Final judgment was entered in the amount of $1,063,755.67.  (Record at Doc. No. 93-1 at Exhibit A).

On or about July 6, 2018, Debtor and Co-Debtor Thomas Kostopoulos filed a Motion to Vacate Final Judgment.  (Record at Doc. No. 115 at P. 77).   On or about November 7, 2018, the Court denied the Motion to Vacate Final Judgment and scheduled the Sheriff's sale for January 25, 2019.  (Record at Doc. No. 115 at P. 74-80).   On or about December 7, 2018, Debtor and Co-Debtor Thomas Kostopoulos appealed the denial of the Motion to Vacate Final Judgment at Superior Court of New Jersey, Appellate Division No. A-1532-18T1.   The

Appellate Division denied the Appeal and affirmed the Denial Order on or about September 20, 2019. (Record at Doc. No. 115 at Pp. 83-95).   During the pendency of the Appeal, Debtor and Co-Debtor Thomas Kostopoulos filed three motions to stay Sheriff's Sale which were granted, cumulatively adjourning the sale from January 25, 2019 to October 18, 2019.  (Record at Doc. No. 115 at P. 101).

Following the denial of the appeal, the Debtor and Co-Debtor Thomas Kostopoulos filed a fourth motion to stay the Sheriff's Sale or about October 15, 2019.  (Record at Doc. No. 115 at Pp. 97-106).   As part of the October 15 motion, the Co-Debtor certified that the Debtor and Co-Debtor had secured $500,000.00 from the Debtor's mother to apply to paying off the mortgage.  (Record at Doc. No. 115 at P. 102).   On or about October 16, 2019, the Court adjourned the sheriff's sale to December 12, 2019 and required that the Debtor and Co-Debtor Thomas Kostopoulos obtain a mortgage commitment and a firm closing date as a precondition to any further adjournments.  (Record at Doc. No. 115 at P. 108).

The Sheriff's sale was adjourned on two further occasions, first from December 12, 2019 to January 23, 2020, and then from January 23 to February 7, 2020. (Record at Doc. No. 115 at P. 110-11).

On February 7, 2020, the date of the scheduled sale, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code under case Bk. Case No. 20-12080-VFP.   Debtor's bankruptcy Schedule A/B did not include any

reference to $500,000 alleged only four months prior to the bankruptcy filing. (Record at Doc. No. 115 at Pp. 113-18).   No Chapter 11 plan was ever filed in this case.

On or about March 19, 2020, the Debtor filed a Motion for Entry of Order Authorizing the Debtor to Obtain Post-Petition Financing, with the Debtor certifying that that she had arranged for a loan from relatives and stating an intention to dismiss the bankruptcy after the loan was used to pay off the mortgage. (Record at Doc. No. 115 at Pp. 120-23).

After the motion was granted, the Debtor sought to partially vacate the order to litigate the standing of the Creditor.  On or about September 29, 2020, the Court sua sponte entered an Order to Show Cause Why Case Should Not be Dismissed. (Record at Doc. No. 115 at Pp. 125-27).   On or about October 28, 2020, Case 20-12080-VFP was dismissed with a 1-year bar on further bankruptcy filings, extending to October 28, 2021. (Record at Doc. No. 115 at Pp. 129-31).

In dismissing the case, the Court noted that although the Debtor filed her case in February 2020, she did not file schedules until August 11, 2020.  (Record at Doc. No. 115 at P. 131).  The Court further noted that she said she filed the petition only to obtain post-petition financing.  (Record at Doc. No. 115 at P. 130).   The Court observed that the Debtor had made representations to the Bankruptcy Court that she had funds to pay off the mortgage, but her schedules indicated that she did

not have those funds.  (Record at Doc. No. 115 at P. 131).  The Court also indicated that the Debtor eventually advised the Court that she wanted to return to state court to vacate the judgment. (Record at Doc. No. 115 at P. 131).

On or about June 25, 2021, Creditor issued an Alias Writ.  (Record at Doc. No. 115 at P. 59).  On June 30, 2021, new counsel for Debtor and Co-Debtor Thomas Kostopoulos asked for the Office of Foreclosure to return the matter to the Chancery Division for the purpose of filing another motion to vacate final judgment and to not issue the Alias Writ.

On or about July 7, 2021, the Office of Foreclosure transferred the matter to the Chancery Division.  (Record at Doc. No. 115 at P. 59).  However, on or about July 23, 2021, the court entered an order directing the Office of Foreclosure to issue the Alias Writ.  (Record at Doc. No. 115 at Pp. 133-39).  Thereafter, the Debtor Co-Debtor filed a Second Motion to Vacate Final Judgment, a Motion to Prevent Issuance of or Quash the Alias Writ of Execution and a Motion for Reconsideration of the Order Issuing the Alias Writ.  (Record at Doc. No. 115 at Pp. 141-53).  On or about October 21, 2021, the motions were denied.  (Record at Doc. No. 115 at Pp. 141-53).

The Debtor filed an appeal of the trial court's ruling on December 6, 2021 at Superior Court of New Jersey, Appellate Division No. A-001041-21T1.   The Sheriff's Sale was scheduled for July 29, 2022.  (Record at Doc. No. 115 at Pp.

155-56).    The Sheriff's Sale was adjourned from July 29, 2022 to September 9, 2022 and then to October 14, 2022.   (Record at Doc. No. 115 at P. 160-63).

On or about September 2, 2022, Debtor and Co-debtor filed a Motion for an Order to Show Cause to stay the Sheriff's Sale in the Chancery Division.   On or about September 8, 2022, the Order to Show Cause was denied.   On or about September 30, 2022, the Debtor filed an Application for Permission to File Emergent Motion with the Appellate Division to stay the Sheriff's Sale scheduled on October 14, 2022.   (Record at Doc. No. 115 at P. 174).   On or about September 30, 2022, permission to file an emergent motion was denied because of failure to comply with multiple rules and failure to explain why the debtor had waited so long to make the current request.  (Record at Doc. No. 115 at Pp. 168-69).   On or about October 6, 2022, Debtor's counsel filed in Chancery Division a Motion to Reconsider the September 8, 2022 denial of the stay of the sheriff's sale pending the outcome of the appeal. (Record at Doc. No. 115 at Pp. 171-73).

On or about October 12, 2022, the application for an order to show cause to vacate the order was denied because "[t]he prejudice in this matter to plaintiff outweighs any slim likelihood of success [of the appeal]." (Record at Doc. No. 115 at P. 1713).    Bankruptcy No. 22-18145 was filed on October 13, 2022.   The Creditor filed proof of claim 6-1 on December 15, 2022.   The claim was filed in

the amount of $1,347,420.15 with $930,763.45 in pre-petition arrears.  The claim is listed as due for July 1, 2006.

The Debtor filed a Chapter 13 plan on October 31, 2022.  (Record at Doc. 115 at Pp. 188-197). The Debtor's plan called for a refinance of the property or a loan modification by April 1, 2023. (Record at Doc. 115 at P. 189).  The only other creditor mentioned by name in the plan was an assumption of an automobile lease for Americredit/GM Financial with no arrears being cured.  (Record at Doc. 115 at P. 194).  Confirmation was denied on May 4, 2023.  (Record at Doc. 115 at Pp. 198-199). On May 11, 2023, the Debtor filed a first modified Chapter 13 Plan. (Record at Doc. 115 at Pp. 200-06). The leased vehicle was no longer included in the plan.  The modified plan called for the sale, refinance or loan modification for the property by March 31, 2024.    (Record at Doc. 115 at P. 201). The Secured Creditor filed an objection to confirmation on June 8, 2023.  (Record at Doc. 115 at Pp. 207-11).  Confirmation was denied on January 18, 2024.  (Record at Doc. 115 at Pp. 212-13).

The Debtor filed a second modified Chapter 13 Plan on February 1, 2024. (Record at Doc. 115 at Pp. 216-21). The Appellee filed an objection to confirmation on February 29, 2024.  (Record at Doc. 115 at Pp. 222-25). The Debtor filed a motion to reduce and expunge claims on March 6, 2024.  (Record at Doc. 93). A response to the motion was filed on April 11, 2024. (Record at Doc.

95). The Debtor filed a response on April 29.  (Record at Doc. 96). The Secured Creditor filed a supplement to its response on May 1, 2024.  (Record at Doc. 97). Confirmation of the second modified plan denied on May 2, 2024.  (Record at Doc. 111 at Pp. 141-44.)

Meanwhile, on October 19, 2023, the court entered a consent order to allow the state court appeal to continue.  (Record at Doc. 115 at. Pp. 214-215).  The appeal was decided in favor of the Secured Creditor on October 24, 2023. (Record at Doc. No. 115 at Pp. 226-254.)   The Debtor sought certification of the matter to the New Jersey Supreme Court, filing a notice of petition for certification on November 14, 2023 and a petition for certification on November 28, 2023.  On June 26 2024, the New Jersey Supreme Court denied the petition for certification.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. 158 (a)(1), the District Court has jurisdiction to hear appeals "from final judgments, orders and decrees" of the bankruptcy court.  The standard of review for the district court in a bankruptcy case depends upon the issues presented on appeal.  The bankruptcy court's factual findings are reviewed for "clear error."  In re Li, 654 B.R. 25, 32 (Bankr. D.N.J. 2023).  Legal conclusions are subject to plenary review. Id.  Discretionary decisions are reviewed for abuse of discretion.  In re Somerset Regional Water Resources, 949 F.3d 837, 844 (3d Cir. 2020).

An abuse of discretion requires "a clearly erroneous finding of fact, an erroneous legal conclusion or an improper application of law to fact." In re Maxus Energy Corporation, 49 F.4th 223, 228 (3d. Cir. 2022). An abuse of discretion occurs, "'where no reasonable person would adopt' the lower court's view." Id. (citing United States v. Foster, 891 F.3d. 93, 107 n.11(3d Cir. 2018)).

Findings of fact are not clearly erroneous unless they are "completely devoid of minimum evidentiary support displaying some hue of credibility of bear[] no rational relationship to the supportive evidentiary data." In re Fiber-Span, Inc. 40F. 4th 79, 93 (3d Cir. 2022)(internal citation omitted.)

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court properly used its discretion to dismiss the Debtor's bankruptcy. First, the Bankruptcy Court found that after several attempts, the Debtor failed to confirm a plan and her most recent plan was infeasible on its face. The Court found that the Debtor filed this bankruptcy case in bad faith because of a long history of ongoing litigation – including simultaneous litigation within the bankruptcy court and in the state court – combined with unkept promises to reorganize or cure. The Debtor was attempting to use the bankruptcy case as a new forum to continue its challenge to standing rather than reorganize.

While the Bankruptcy Court expressed skepticism on the Debtor's new claims regarding its long-standing challenge to standing, the Court decided to leave

those issues to the state courts, in effect, permissively abstaining from those matters, considering the lack of proper bankruptcy purpose behind the filing.

## **ARGUMENT**

## I. **The Bankruptcy Court Acted Within Its Proper Discretion to Dismiss the Debtor's Bankruptcy Because the Plan was Infeasible.**

Under 11 U.S.C. 1307, a Chapter 13 bankruptcy case may be dismissed "for cause." In re Lilley, 91 F3d 491, 496 (3d Cir. 1996). Section 1307 includes 11 statutorily identified causes, though it is "beyond dispute that a court may consider matters other than those enumerated in section 1307(c) as grounds for dismissal of a Chapter 13 petition." Lilley at 494. Here, the Court had substantial cause for dismissing the Debtor's bankruptcy.

The Bankruptcy Court found separate causes for dismissal under sections 1307(c) sections (1) and (5). Section 1307(a)(1) says that cause can be "unreasonable delay by the debtor that is prejudicial to the creditors." Section 1307(a)(5) says cause can be "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan."

The Court started its discussion by noting that the plan was infeasible on its face. The Debtor's plan called for the sale of the property, refinance of the loan or a loan modification by March 31, 2024. By the time of the hearing on May 2, 2024, none of those things had been accomplished. Hence, the plan was infeasible.

13

As the Bankruptcy Court noted, "[w]e would have to go backwards in time." (5/2/24, Tr. 10). The Court emphasized during a January 4, 2024 hearing it directed the Debtor to bring the matter to a swift conclusion. (5/2/24, Tr. 18-19). The Court found the Debtor's failure to meet—or even attempt to meet—that deadline to be sufficient to dismiss the case under Section 1307(a)(5).

The finding that the Bankruptcy Plan was infeasible on its face was clearly correct. It is undisputed that the Debtor failed to sell the property, refinance the property or modify the loan by the March 31, 2024 deadline. There was no evidence that the Debtor had met the deadlines of the proposed plan and had the plan been confirmed, the debtor would immediately have been more than one month in default. Moreover, a full year into the bankruptcy, the judge warned the Debtor to make demonstrable progress in the case, and yet the Debtor was not significantly closer to confirming a Chapter 13 plan in May 2024 than she was in January 2024. Indeed, on April 29, 2024, the Debtor asked for permission to begin an adversary proceeding on the question of standing. The case was properly dismissed.

## II.    **The Bankruptcy Court Acted Within Its Proper Discretion to Dismiss the Debtor's Bankruptcy Because the Case was Filed in Bad Faith.**

The Bankruptcy Court also correctly found that the bankruptcy was filed in bad faith and for in improper purpose. The Court's conclusion was that:

> the real purpose of this case was to obtain a litigation advantage
> against the secured creditor by staying their foreclosure and then
> seeking to re-litigate it again.

(5/2/24, Tr. 16).  The Court then cited In re Integrated Telecom Express, 384 F. 3d

108 (3d Cir. 2004) for the proposition that "filing a Chapter 11 petition merely to

obtain tactical litigation advantages is not within 'the legitimate scope of the

bankruptcy laws,'" which the Court applied by analogy to Chapter 13 cases. Id. at

120. (internal citations omitted). See also 15375 Memorial Corp, 589 F.3d 605 (3d

Cir. 2009).

The Bankruptcy Court highlight several factors in considering the dismissal.

First was the timing of the bankruptcy filings.  As the court noted, the Debtor filed

two bankruptcies, years apart, and both were filed on the eve of the foreclosure

sale.  (5/2/24, Tr. 14).

The Court also concluded that the motive for filing the bankruptcy was "the

idea of starting another litigation in this Court based on standing and assignment,

the improper record of assignments and fraud in the assignments which was

litigated ad nauseum in the state court and seeks to be re-litigated here."  (5/2/24,

Tr. 15).  The Debtor's first bankruptcy case was dismissed when the Debtor

expressed a preference to continue the state court litigation to vacate the judgment.

At the time the second bankruptcy case was filed, the Debtor failed to obtain a stay

of the foreclosure sale to allow her to pursue an appeal.  Even within the

bankruptcy, the Debtor obtained a consent order to allow the Debtor to continue the state court appeal while the bankruptcy was pending. When the appeal was denied, the Debtor sought, unsuccessfully, to have the matter certified to the New Jersey Supreme Court.  Simultaneously, the Debtor had a pending Motion to Reduce Claim and Expunge Claims and just prior to dismissal sought permission to file an adversary action regarding the Appellee's standing.  There is more than sufficient evidence in support of the Bankruptcy Court's finding.

The Court concluded that the Debtor's actions in the Bankruptcy Court had prejudiced the Appellee.  The Court observed that only the Appellee was negatively affected by the bankruptcy at this point and the Appellee had a foreclosure judgment for five years. (5/2/24, Tr. 15).  This was true, insofar as the only other creditor identified in the plan, a lessor of an automobile, had obtained relief early in 2023.

The Court believed that the Debtor was not forthcoming with the Court, having not submitted evidence that the Debtor had made any effort to sell the property, refinance the loan or modify the mortgage.  There was an order on the docket granting a motion to retain a realtor entered on February 13, 2024, but no record that the property had a buyer.  There was no motion seeking permission to obtain refinancing funding.   As the Court noted, the Debtor had already rejected an offer to modify the mortgage.  (5/2/24, Tr. 16).

In addition to failing to sell, refinance or modify the mortgage, the Court noted the Debtor's long history of unfilled promises.  The Debtor has been in default since 2006, filed multiple duplicative motions to vacate the judgment which were denied, appeals of the denials, and bankruptcy filings when sale adjournments were not available.  When the Court warned the Debtor to bring an end to the litigation in January 2024, the Debtor filed an amended plan but kept the March 31, 2024 litigation, yet still failed to accomplish that goal.

The history of this case is replete with unfulfilled promises, including the Debtor's promise to obtain post-petition funding in the previous bankruptcy only change her mind and decide to resume the litigation.  As a condition to one of the adjournments of the foreclosure sale prior to both bankruptcies, the Co-Debtor claimed to have obtained funds to partially the claim, a claim belied by the filing of schedules in the first bankruptcy showing that the debtor did not have such funds.  It is not a clear error on this record to believe that the Debtor was dangling promises of cures to stall the foreclosure and preserve the opportunity to litigate.

The Court, therefore, had good reason to believe that the Debtor had no intention of reorganizing through the bankruptcy.

Similarly, the Court correctly concluded that the Debtor's sole intent in filing for bankruptcy protection was to relitigate the foreclosure.  For one thing, the Debtor had already once filed a bankruptcy case that she decided to abandon after

17

eight months to return to state court to litigate. For another, the Debtor was in the midst of an appeal in State Court at the time she filed the most recent bankruptcy. The Debtor filed an appeal of the trial court on December 6, 2021 at Superior Court of New Jersey, Appellate Division No. A-001041-21T1. The bankruptcy was filed following the denial of a stay of the sheriff's sale pending appeal.

On October 19, 2023, a consent order was entered lifting the automatic stay to allow the appeal in the bankruptcy court to proceed. The Debtor would subsequently lose in the appellate division and ultimately be denied certification by the New Jersey Supreme Court. Had the Debtor not filed for bankruptcy, the sheriff's sale would have proceeded on October 14, 2022. This is more than enough reason to believe that the record demonstrated "that the real intention and goal of the debtor is to avoid paying this foreclosure judgment as long as is possible and to continue to litigate and delay and cause additional expense for what is now coming to the close of a second decade." (5/2/24, Tr. 12).

### III.    The Bankruptcy Court Properly Abstained from Considering the Debtor's Standing Challenge.

The Appellant wrongly claims that the Bankruptcy Court found that all the claims raised by the Debtor had been previously considered. The Court did note that the Debtor had raised claims related to standing and assignments previously in the State Court. It is also true that the Bankruptcy Court expressed skepticism about the Debtor's claims. (5/2/24, Tr. 15). However, the Court also acknowledge

18

that the Appellant sought to raise new or different challenges to the lender's

standing to foreclose and correctly decided to leave the matter to the state courts:

> If there's some newly-discovered evidence that wasn't available
> before and that might be grounds to affect a judgment in state court.
> But that path has already been gone down a number of times.  I'm not
> sure how receptive that would be.  **But that's what the state court is
> for.**  What really it should be for is—what this Court is not for is to
> revisit and effectively reverse what the state court done after all that
> being going on.

(5/2/24, Tr. 16.)(Emphasis added.)

Leaving the matter to the state court is allowed under 28 U.S.C. 1334(c)(1).

Permissive abstention "does not require a motion and can be raised by the court

sua sponte." In re LaRoche Industries, Inc., 312 B.R. 249, 256 (D.Del 2024).

Looking at the factors for permissive abstention outlined in LaRoche, several

match factors discussed by the Court.  For one, the Court decided that "the

proceeding in the bankruptcy court involves forum shopping by one of the parties."

Id. at 253.  The final judgment and then-pending appeals satisfy "the presence of a

related proceeding commenced in state court" factor.  Id. at 253.  The idea that the

state court is better forum to litigate these issues reflects the "the extent to which

state law issues predominate over bankruptcy issues."  Id.  Considering the Court's

finding of bad faith with respect to the bankruptcy, the Court rightfully decided that

the Bankruptcy Court was not the right forum for deciding this inherently state

court issue.

19

## <u>CONCLUSION</u>

Wherefore, the Appellee respectfully request that the Debtor's appeal be

denied.

By: /s/ Jason Schwartz
Jason Schwartz, Esq.
**FRIEDMAN VARTOLO LLP**
1628 John F. Kennedy Boulevard
Suite 1810
Philadelphia, PA 19103
Attorneys for American Mortgage
Investment Partners Management, LLC as
Servicer for Wilmington Savings Fund
Society, FSB, as Owner Trustee of the
Residential Credit Opportunities Trust VI-A

T: (212) 471-5100
F: (212) 471-5150
Bankruptcy@FriedmanVartolo.com

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the page limitation and type volume limit of Rule

8015(a)(7)(A) and (B).


Dated: August 13, 2024

/s/ Jason Schwartz
Jason Schwartz, Esq.

## **CERTIFICATE OF BAR MEMBERSHIP**

I certify that I am a member in good standing on the bar of the United States

District Court for the District of New Jersey


Dated: August 13, 2024

/s/ Jason Schwartz
Jason Schwartz, Esq.
